UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-12-0144 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT** |
| MIKAL XYLON WILDE, | **(Docket No. 87)** |
| Defendant. | |

On September 9, 2014, Defendant Mikal Xylon Wilde filed a motion to dismiss the Government's indictment. Docket No. 87. In his motion, Wilde argues that the indictment must be dismissed because the classification of marijuana as a Schedule I substance under the Controlled Substances Act (CSA)[1] violates his Fifth Amendment rights. In his reply brief, Wilde also argues (for the first time) that the indictment must be dismissed because the "Government's current enforcement policy" with respect to the marijuana laws "violates the doctrine of Equal Sovereignty of the States." *See* Docket No. 97 at 4. As explained in more detail below, because Congress's classification of marijuana as a Schedule I controlled substance satisfies traditional rational basis review, and because Wilde waived his equal sovereignty argument, the Court **DENIES** Wilde's motion to dismiss the indictment.

///

///

---

[1] Codified as amended at 21 U.S.C. § 801, et seq.

## I. BACKGROUND

On August 25, 2010, Mario Roberto Juarez-Madrid was shot and killed near a marijuana grow in Kneeland, California. *See* Docket No. 20. Fernando Lopez-Paz was also shot during this incident, but survived. *Id.* Messrs. Juarez-Madrid and Lopez-Paz were allegedly Wilde's employees at the marijuana grow. Docket No. 43 at 5. The marijuana grow was quite large – involving more than 1,000 marijuana plants – and was allegedly protected by workers who had been armed by Wilde. *See* Docket No. 96 at 6.

Wilde was arrested by state authorities the day after the homicide, and was later held to answer in state court for the murder of Mr. Juarez-Madrid and the attempted murder of Mr. Lopez-Paz. Docket No. 20. On March 1, 2012, the federal government filed a six count indictment against Wilde addressing this same incident. Docket No. 1. Specifically, Wilde was charged with: 1) conspiring to manufacture, distribute, and possess with intent to distribute 1,000 or more marijuana plants in violation of 21 U.S.C. § 846; 2) manufacturing, distributing, and possessing with the intent to distribute more than 1,000 marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); 3) murder during a narcotics offense in violation of 21 U.S.C. § 848(e)(1)(A); 4) using or possessing a firearm during and in relation to a crime of violence or a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); 5) using or possessing a firearm in a murder in violation of 18 U.S.C. § 924(j); and 6) being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g). *Id.* at 3. The Government later agreed to dismiss Count Six of the indictment. *See* Docket No. 33. The Government filed a superseding indictment on October 2, 2014. Docket No. 96.

Wilde now moves to dismiss the Government's indictment. Docket No. 87. In his motion, Wilde argues that the classification of marijuana in Schedule I of the CSA violates his Fifth Amendment rights because such classification is irrational and arbitrary. *Id.* Wilde further argues that the designation of marijuana as a Schedule I controlled substance is not rationally related to any legitimate federal interest. *Id.* In his reply brief, Wilde also claims that the Government's enforcement of the federal marijuana laws differs in those states, like California, where marijuana may be legally used under state law as opposed to those states where marijuana use remains

2

completely prohibited, and that such allegedly disparate enforcement of the federal marijuana laws violates the doctrine of equal sovereignty of the states. Docket No. 97.

## II. DISCUSSION

A. Fifth Amendment Challenge

Before reaching the merits of Wilde's Fifth Amendment challenge to the classification of marijuana under the CSA, the Court must determine the appropriate level of scrutiny to apply to Congress's determination to include marijuana in Schedule I. Wilde argues that the Court should apply strict scrutiny because "fundamental rights are at issue," namely the right to "use medical marijuana on the advice of a doctor." Docket No. 87 at 9-10. The Government, however, argues that the Court should engage in traditional rational basis review. Docket No. 95 at 4. For the reasons explained below, the Government is correct that rational basis review applies under the factual circumstances of this particular case.

1. Strict Scrutiny Does Not Apply In This Murder Case

The Supreme Court has held that some liberties are so important that they should be considered "fundamental rights." *See, e.g.*, *Shapiro v. Thompson*, 394 U.S. 618, 638 (1969) (holding that the right of interstate movement is fundamental); *Zablocki v. Redhail*, 434 U.S. 374, 383 (1978) (holding that the right to marry is fundamental). The Constitution provides "heightened protection against government interference with certain fundamental rights." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Thus, the government cannot generally infringe upon fundamental rights unless strict scrutiny is met. *See generally Shapiro*, 394 U.S. at 638; *Zablocki*, 434 U.S. at 383.

Wilde argues that this Court should apply strict scrutiny to Congress's decision to classify marijuana as a Schedule I controlled substance because individuals have a fundamental right to "use medical marijuana on the advice of a doctor." Docket No. 87 at 9-10. Wilde admits that no court to date has held that citizens have a constitutionally fundamental right to use medical marijuana. *Id.* at 11. Indeed, he acknowledges that the Ninth Circuit recently disclaimed such a right. *See Raich v. Gonzalez*, 500 F.3d 850, 866 (9th Cir. 2007) ("[F]ederal law does not recognize a fundamental right to use medical marijuana prescribed by a licensed physician . . . ."). Nevertheless, Wilde argues that this Court should deem the use of medical marijuana fundamental given that a number of states have

legalized medical marijuana use since the Ninth Circuit's decision in *Raich*, and further given that the "trend" arguably shows increasing societal acceptance of medical cannabis. *Id.* at 10-11.

This Court is not necessarily unsympathetic to the argument that the use of medical marijuana might one day be considered fundamental. As the Ninth Circuit noted in *Raich*, "medical and conventional wisdom that recognizes the use of marijuana for medical purposes is gaining traction in the law." *Raich*, 500 F.3d at 866. The *Raich* court further noted that the "day when the right to use medical marijuana to alleviate excruciating pain may be deemed fundamental . . . may be upon us sooner than expected." *Id.* But even if there were a fundamental right to medical marijuana sufficient to involve more rigorous scrutiny than rational basis, it would be of no assistance to Wilde here. There are no allegations charged in this case that Wilde's large-scale marijuana grow was intended for medicinal purposes or was otherwise compliant with California's Compassionate Use Act of 1996.[2] Nor has Wilde so contended or substantiated in his moving papers. Rather, the indictment alleges that Wilde employed armed workers to protect a large illegal marijuana operation, and that Wilde murdered one such worker and attempted to murder another. *See* Docket No. 43 at 5; Docket No. 96 at 6. The alleged facts in this case stand in stark contrast to *Raich* and similar cases where individuals with serious medical needs have sought to establish a constitutionally protected right to use marijuana for medical treatment: Ms. Raich needed marijuana to treat "ten serious medical conditions, including an inoperable brain tumor." *Raich*, 500 F.3d at 855. Nor does this case involve a party central to a medical marijuana supply chain authorized under state law. Consequently, Wilde's argument that heightened or strict scrutiny should apply to the possession, use, or distribution of medical marijuana has no application here.

2. <u>Traditional Rational Basis Review Applies</u>

Wilde concedes that this Court should employ rational basis review if it determines that strict scrutiny does not apply to his Fifth Amendment claims. Docket No. 87 at 9-10; *see also Romero-Ochoa v. Holder*, 712 F.3d 1328, 1331 (9th Cir. 2013) (noting that rational basis review applies when a given enactment "does not implicate a fundamental right or target a suspect class"). There

---

[2] Codified at Cal. Health & Safety Code § 11362.5, et seq.

4

are, however, two versions of the rational basis test – traditional rational basis review and a more rigorous rational basis standard "sometimes referred to as 'rational basis with a bite.'" *Dairy v. Bonham*, No. C-13-1518 EMC, 2013 WL 3829268, at *5 n.4 (N.D. Cal. July 23, 2013) (citations omitted); *see also* Erwin Chemerinsky, *Constitutional Law: Principles and Policies*, 680 (3d ed. 2006). Traditional rational basis review is a very deferential standard whereby a challenged law will be upheld "if any state of facts reasonably can be conceived that would sustain it . . ." *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911); *see also Dallas v. Stanglin*, 490 U.S. 19, 26 (1989) (describing traditional rational basis review as "the most relaxed and tolerant form of judicial scrutiny"). Thus, "[o]ne who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." *Lindsley*, 220 U.S. at 78-79 (citations omitted); *see also FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993) (explaining that "those attacking the rationality of [a] legislative classification have the burden to negate every conceivable basis which might support it") (citations omitted). By contrast, the rational basis "with a bite" standard is less deferential to the legislative enactment, and a challenged law will be struck down if the court determines that it is in fact arbitrary, irrational, and/or unreasonable.[3] *See, e.g.*, *Allegheny Pittsburgh Coal Co. v. Cnty. Commissioner*, 488 U.S. 336, 344-45 (1989) (striking down a local tax collection scheme as an unreasonable exercise of legislative prerogative); *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 450 (1985) (striking down a city ordinance that reflected nothing more than "irrational prejudice"); *Romer v. Evans*, 517 U.S. 620, 634 (1996) (striking down a State initiative grounded solely in "animosity toward the class of persons affected"). Under active rational basis review, facts matter.

In asking this Court to review current scientific evidence and contemporary legislative developments in assessing the constitutionality of maintaining marijuana as a Schedule I controlled substance, Wilde assumes this Court should apply the more rigorous active rational basis test. *See* Docket No. 87 at 11-13. If traditional rational basis applied, this factual information would be

---

[3] Certain courts refer to this more rigorous rational basis standard as "active" rational basis review. *See, e.g.*, *United States v. Heying*, No. 14-CR-30 (JRT/SER), 2014 WL 5286153, at *7 (D. Minn. Aug. 15, 2014) (refusing to apply "active rational basis review" to Fifth Amendment challenge to marijuana's classification under the CSA).

irrelevant since legislation and regulations will be upheld so long as there is any "conceivable" basis justifying the challenged classification. Under the traditional rational basis test, it is not necessary to examine the actual justification and supporting facts for the challenged classification.

Contrary to Wilde's assumption, active rational basis review does not apply here. A common thread runs through nearly all of the Supreme Court cases where active rational basis review was employed to determine the constitutionality of a legislative enactment. Namely, these cases involve situations where a legislative classification appears to have been based on animus or a desire to harm a politically unpopular group. *See, e.g.*, *Windsor v. United States*, 699 F.3d 169, 180 (2d Cir. 2012) (noting that "several courts" understand the Supreme Court to require that "rational basis review [] be more demanding when there are historic patterns of disadvantage suffered by the group adversely affected by the statute") (citations omitted), *aff'd*, 133 S.Ct. 2675 (2013); *Lawrence v. Texas*, 539 U.S. 558, 580 (2003) (O'Connor, J. concurring) ("When a law exhibits such a desire to harm a politically unpopular group, we have applied a more searching form of rational basis review to strike down such laws under the Equal Protection Clause."). For example, in *City of Cleburne* the Supreme Court declared unconstitutional a city ordinance that required a special permit for the operation of a group home for the mentally disabled. 473 U.S. at 450. The Court began its analysis by noting that classifications based on mental disability do not involve either a suspect or quasi-suspect classification, and thus rational basis review should apply. *Id.* at 442. Nevertheless, the Court rejected all of the city's justifications for the law. For instance, the city argued that property owners in the area opposed a facility for the mentally disabled, and the city expressed concern that students from a junior high school across the street from the group home might harass its occupants. *Id.* at 448-449. The Court rejected these justifications as based on prejudice against the mentally disabled, and noted that indulging such biases is not a legitimate government purpose. *Id.*

Similarly, the Court used an "active" version of the rational basis test to invalidate a Colorado initiative that encouraged discrimination on the basis of sexual orientation. *Romer*, 517 U.S. at 620. Writing for the Court, Justice Kennedy explained that Colorado's initiative "has the peculiar property of imposing a broad and undifferentiated disability on a single named group, an exceptional and . . . invalid form of legislation." *Id.* at 632. The Court determined that there was no

1 legitimate purpose for denying members of the LGBT community the same use of the political
2 process available to all other citizens, observing that the only apparent purpose behind the initiative
3 was "animosity toward the class of persons affected." *Id.* at 634.[4]

4 By contrast here, Wilde has submitted no evidence that Congress passed the CSA, or chose
5 to list marijuana as a Schedule I controlled substance, because of animus or some discriminatory
6 legislative purpose. *See Heying*, 2014 WL 5286153, at * 7 ("[T]he Court concludes no
7 discriminatory legislative purpose motivated the inclusion of marijuana as a Schedule I controlled
8 substance . . . ."). Nor did Wilde argue or present any evidence that marijuana users are a politically
9 unpopular group specifically targeted by the CSA. Hence, there is no justification for applying a
10 heightened or more rigorous version of rational basis review in this case. As the Court in *Heying*
11 properly determined, traditional "rational basis is the appropriate standard of review" for a Fifth
12 Amendment challenge to Congress's classification of marijuana under the CSA. *Id.* at *7.

3. <u>Congress's Marijuana Scheduling Determination Satisfies Traditional Rational Basis Review</u>

15 With the appropriate standard of review established, the Court now turns to the merits of
16 Wilde's Fifth Amendment claim. Wilde argues that Congress's decision to include marijuana in
17 Schedule I is unconstitutionally arbitrary and irrational. "For a substance to be designated a
18 Schedule I controlled substance, it must be found: (1) that the substance 'has a high potential for
19 abuse'; (2) that the substance 'has no currently accepted medical use in treatment in the United
20 States'; and (3) that 'there is a lack of accepted safety for use of the drug or other substance under
21 medical supervision.'" *Raich*, 500 F.3d at 854 (quoting 21 U.S.C. § 812(b)(1)) (internal
22 modification omitted). Wilde argues that marijuana meets none of these three criteria, and hence its
23 inclusion in Schedule I of the CSA cannot stand.

---

[4] *Cf. Plyler v. Doe*, 457 U.S. 202, 223-224 (1982) (holding that the "discrimination contained in [a Texas law withholding funds from local school districts for the education of children not legally admitted into the United States] can hardly be considered rational unless it further some substantial goal of the State"). Unlike *Plyler*, where the Court applied heightened scrutiny, the instant case does not involve the combination of an important, if not fundamental, right and a sensitive, if not suspect, classification. Nor does this case single out a vulnerable group whose disadvantage was not of their own making.

7

In support of his motion, Wilde attached voluminous exhibits purporting to demonstrate the safety and medical efficacy of marijuana. *See* Docket Nos. 87-1 to 87-30. These filings are ultimately irrelevant, however, as federal courts (both within and without this circuit) have repeatedly rejected constitutional challenges to the classification of marijuana under the CSA when applying traditional rational basis review. *See, e.g.*, *United States v. Miroyan*, 577 F.2d 489, 495 (9th Cir. 1978), *overruled on other grounds as recognized by United States v. Pineda-Moreno*, 688 F.3d 1087, 1090-91 (9th Cir. 2012); *United States v. Fogarty*, 692 F.2d 542, 547-48 (8th Cir. 1982); *United States v. Middleton*, 690 F.2d 820, 822-24 (11th Cir. 1982); *United States v. White Plume*, 447 F.3d 1067, 1075-76 (8th Cir. 2006); *United States v. Chan*, No. CR-0375 SI, 2006 WL 734395, at *5 (N.D. Cal. Mar. 20, 2006); *United States v. Oakland Cannabis Buyers' Co-op*, 259 F. App'x 936, 938 (9th Cir. 2007); *Alternative Community Health Care Co-op., Inc. v. Holder*, No. 11-cv-2585-DMS, 2012 WL 707154, at *6 (S.D. Cal. Mar. 5, 2012); United *States v. Ernst*, 857 F. Supp. 2d 1098, 1103-04 (D. Or. 2012); *United States v. Smith*, No. 11-cr-0428-GEB-1, 2012 WL 2620526, at *1 (E.D. Cal. July 5, 2012); *United States v. Washington*, 887 F. Supp. 2d. 1077, 1102-03 (D. Mont. 2012); *Heying*, 2014 WL 5286153 at *8-10. This is so because a "'statute is presumed constitutional'" and the burden under rational basis review is on the "'one attacking the legislative arrangement to negate *every conceivable basis* which might support it.'" *Oakland Cannabis Buyers' Co-op*, 259 F. App'x at 938 (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)) (internal quotation marks omitted) (emphasis added); *cf. Hodel v. Indiana*, 452 U.S. 314, 331-32 (1981) (explaining that a court may not "substitute its policy judgment for that of Congress" and holding that legislation must be upheld against attack unless the challenger makes a "clear showing of arbitrariness and irrationality"); *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (noting that legislative bodies are "accorded wide latitude" under the rational basis test, and "rational distinctions may be made with substantially less than mathematical exactitude").

As previously noted, under traditional rational basis review, if there is "'any reasonably conceivable state of facts that could provide a rational basis'" for the legislation, it must be upheld. *Oakland Cannabis Buyers' Co-op*, 259 F. App'x at 938 (quoting *Beach Communications, Inc.*, 508 U.S. at 313) (internal quotation marks omitted); *see also Lindsley*, 220 U.S. at 78 (holding that a

challenged law will be upheld "if any state of facts reasonably can be conceived that would sustain it"). This Court has little difficulty concluding that under some "reasonably conceivable state of facts," marijuana's classification in Schedule I of the CSA is rationally related to a legitimate government interest. For instance, Congress could rationally conclude that marijuana should be classified as a Schedule I substance because it might be abused by, or cause harm to, minors. *See, e.g.*, *In re Alexis E.*, 171 Cal. App. 4th 438, 452 (Cal. 2009) (noting that marijuana use may pose a risk to minors). Moreover, under traditional rational basis review, the mere existence of an "ongoing vigorous dispute as to the physical and psychological effects of marijuana, its potential for abuse, and whether it has any medical value, supports the rationality of continued Schedule I classification." *Fogarty*, 692 F.2d at 548; *accord Heying*, 2014 WL 5286153 at *9-10 ("Given the continuing debate over marijuana, this court must defer to the legislature's judgments on disputed factual issues.") (citation omitted). Consequently, Wilde's Fifth Amendment challenge to Congress's scheduling determination must fail. Moreover, since traditional rational basis review does not warrant engaging in scrutiny of the factual merits of the scientific debate, no evidentiary hearing is warranted in this case.

B.  <u>Tenth Amendment/Equal Sovereignty Challenge</u>

Wilde also argues in his reply brief that the federal government's current enforcement of the marijuana laws violates the Tenth Amendment, and particularly its guarantee that the states be treated as equal sovereigns.[5] Docket No. 97 at 4 ("Additionally, the defense now asserts that the Government's current enforcement policy with respect to [the federal marijuana laws] violates the doctrine of Equal Sovereignty of the States."). The Court will not address this argument, because it was first raised in Wilde's reply brief. *See, e.g.*, *Pham v. Financial Industry Regulatory Authority, Inc.*, No. C-12-6374 EMC, 2013 WL 1320635, at *2 n.1 (holding that argument raised for first time

---

[5] "The principle of equal sovereignty recognizes that 'the constitutional equality of the states is essential to the harmonious operation of the scheme upon which the Republic was organized." *Heying*, 2014 WL5286153 at *15 (quoting *Coyle v. Smith*, 221 U.S. 559, 580 (1911)). "Different treatment of the states can be justified in some cases, but a departure from the fundamental principles of equal sovereignty requires a showing that a statute's disparate geographic coverage is sufficiently related to the problem that it targets." *Id.* (quoting *Northwest Austin Municipal Utility District No. One v. Holder*, 557 U.S. 193, 203 (2009), and citing *Shelby County, Ala. v. Holder*, 133 S.Ct. 2612, 2623-24 (2013)) (internal quotation marks omitted).

9

in reply brief is waived); *Grecu v. Evans*, No. C-07-0780 EMC, 2012 WL 4643871, at *6 (N.D. Cal. Oct. 1, 2012) (same); *Dytch v. Yoon*, C10-02915 MEJ, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011) (holding that it is "improper for the Court to consider" new arguments raised in a reply brief). The Court notes that Wilde has not shown any geographically disparate application of the CSA, which is a fundamental prerequisite to any successful equal sovereignty challenge. *See, e.g.*, *Heying*, 2014 5286153 at *17 (holding that "even if the equal sovereignty doctrine could be found to apply . . . Defendants have presented no evidence of disparate geographic coverage"). Wilde's Tenth Amendment argument has not properly been raised.

### III. CONCLUSION

Wilde's motion to dismiss the indictment is **DENIED.**

This order disposes of Docket No. 87.

IT IS SO ORDERED.

Dated: November 18, 2014

_____
EDWARD M. CHEN
United States District Judge