MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

KIMBERLY E. HOPKINS (MABN 668608)
WILLIAM FRENTZEN (LABN 24421)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-6758
   Facsimile: (415) 436-6753
   E-Mail: william.frentzen@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | No. CR-12-0144-EMC |
|    v. ) | |
| ) | GOVERNMENT'S TRIAL BRIEF |
| MIKAL X. WILDE, ) | |
|    Defendant. ) | |

     The trial in this matter is set to begin February 2, 2015, and the pretrial conference is scheduled for January 12, 2015.  Pursuant to the Court's Pretrial Order, the Government respectfully submits the following Trial Brief.

**I.    THE CHARGED OFFENSES**

     Defendant Wilde is charged with the following offenses:

     <u>**Count One**</u>: 21 U.S.C. Sections 846 and 841(b)(1)(A)(vii), Conspiracy to Manufacture, Distribute and Possess with Intent to Distribute 1000 or More Marijuana Plants.

     Elements:

     First, beginning on or before June 2010, and ending on or about August 25, 2010, there was an

agreement between two or more persons to distribute and to manufacture and to possess with intent to distribute 1000 or more marijuana plants;

Second, the defendant knew the agreement had an unlawful object or purpose; and

Third, the defendant joined in the agreement with the intent to further its unlawful object or purpose. Ninth Circuit Model Jury Instruction 9.19.

**Count Two**: 21 U.S.C. Sections 841(a)(1) and (b)(1)(A), Manufacture, Distribution, and Possession with Intent to Distribute 1000 or More Marijuana Plants.

Elements:

First, the defendant knowingly manufactured or distributed, 1000 or more marijuana plants, and

Second, the defendant knew that it was marijuana or some other prohibited drug. Ninth Circuit Model Jury Instruction 9.18.

Or, first, the defendant knowingly possessed 1000 or more marijuana plants, and

Second, the defendant possessed it with the intent to distribute it to another person. Ninth Circuit Model Jury Instruction 9.15.

**Count Three**: 21 U.S.C. Section 848(e)(1)(A), Murder During Narcotics Offense.

Elements:

First, the defendant engaged in a violation of 21 U.S.C. Sections 846 and 841(b)(1)(A), as charged in Count One, or a violation of 21 U.S.C. Sections 841(a)(1) and (b)(1)(A), as charged in Count Two,

Second, the defendant unlawfully killed or caused the killing of another individual while engaged in the violation of Count One or Count Two,

Third, the defendant killed the victim with malice aforethought, and

Fourth, the killing was premeditated. (NB: If the fourth element is not met, then it would constitute a Second Degree Murder). 21 U.S.C. Section 848(e)(1)(A); Ninth Circuit Model Jury Instruction 8.107 and 8.108.

**Count Four**: 18 U.S.C. Section 924(c),Use/Possession of a Firearm During and In Relation to Drug Trafficking Crime

Elements:

First, the defendant committed the crime of narcotics conspiracy as charged in Count One of the Indictment or the crime of manufacturing, distributing, and possessing with intent to distribute marijuana as charged in Count Two of the Indictment, both of which I instruct you are drug trafficking crimes,

Second, the defendant knowingly used, carried, discharged, or brandished a firearm during and in relation to the crimes charged in Count One or Count Two, or knowingly possessed, discharged or brandished a firearm in furtherance of the crimes charged in Count One or Count Two.

**Count Five**: 18 U.S.C. Section 924(c), Use/Possession of a Firearm During and In Relation to Crime of Violence

Elements:

First, the defendant committed the crime of murder during narcotics offense as charged in Count Three of the Indictment, which I instruct you is a crime of violence,

Second, the defendant knowingly used, carried, discharged, or brandished a firearm during and in relation to the crime charged in Count Three, or knowingly possessed, discharged or brandished a firearm in furtherance of the crime charged in Count Three.

**Count Six**: 18 U.S.C. Section 924(j): Use/Possession of Firearm in Murder

Elements:

First, the defendant committed the crime of narcotics conspiracy as charged in Count One, or the crime of manufacturing, distributing, and possessing with the intent to distribute marijuana as charged in Count Two of the Indictment, or the crime of murder during narcotics offense as charged in Count Three, each of which I instruct you is either a drug trafficking crime or a crime of violence,

Second, that the defendant knowingly used or carried a firearm during and in relation to the crimes charged in Count One, Two or Three, or knowingly possessed a firearm in furtherance of the crimes charged in Count One, Two or Three,

Third, in the course of that crime, the defendant caused the death of a person through the use of the firearm,

Fourth, the defendant unlawfully killed the person,

Fifth, the defendant killed the person with malice aforethought, and

Sixth, the killing was premeditated. If the murder was not determined to be premeditated, then it is second degree murder. 18 U.S.C. Section 924(j), Ninth Circuit Model Instruction 8.107, 8.108.

Defenses: the government is not aware of any defenses, affirmative or otherwise, that the defendant may raise at trial.

## II. STATEMENT OF THE EVIDENCE

What follows is a brief statement of what the government expects to prove.

In the summer of 2010, defendant Wilde purchased remote rural property in Humboldt County, California, to grow marijuana. Roberto Juarez-Madrid, Fernando Lopez-Paz and Christopher Bigelow agreed to work for Wilde by watering plants, caring for the plants, and protecting the grow from being "ripped," or robbed, by robbers. Victims Lopez and Juarez were illegal aliens from Guatemala. Mr. Bigelow was from Sacramento.

By August 25, 2010, victim Lopez had been working the grow for approximately two months. Mr. Bigelow and Mr. Juarez had been brought in about one month after Mr. Lopez. The three worked the grow but had not been paid regularly by defendant Wilde. The three men complained about the conditions and eventually decided to leave. Shortly before August 25, 2010, Wilde reclaimed firearms that he had loaned to the men to protect the marijuana plants.

During the evening of August 25, 2010, Wilde pulled up in his truck to a trailer where the three men were getting their belongings together so that they could leave the property. When Wilde got out of the truck, he began firing a revolver. He shot Mr. Lopez in the face non-fatally – the projectile hit Mr. Lopez in the face and traveled through his body, exiting his upper back. Mr. Lopez ran into the woods, bleeding, and hid.

Wilde shot Mr. Juarez three times from behind while pursuing him. The third gunshot wound was a "contact" shot to the back of Mr. Juarez's head. Mr. Bigelow was in the trailer during the incident, although he could see what was occurring, and then he fled into the woods unharmed.

Mr. Bigelow and Mr. Lopez hid during the night in the woods. During the morning of August 26, 2010, Mr. Bigelow found a jogger on a nearby road and asked for help. The jogger went to get the police. Mr. Lopez was found by firefighters and then police, wounded and walking to a fire station near the Kneeland airport. Both men gave statements about what had happened.

Shortly after, police found defendant Wilde driving in his truck. They arrested him. Searches were conducted of his person, the marijuana grow, Wilde's residence, and Wilde's truck. Approximately 1600 marijuana plants were found on Wilde's property. Lots of ammunition was found on the property, in the residence, and in the vehicle. Indicia and evidence of the marijuana manufacturing was everywhere. No murder weapon was located.

In Wilde's truck, investigators found a pair of boots. DNA evidence revealed that the major contributor to the DNA inside the boots (demonstrating the wearer of the boots) was Wilde. On the right boot, there was small blood spatter, consistent with being within a few feet of a high velocity impact with blood. According to DNA analysis, the blood on the boot was determined to be blood from Mr. Juarez.

### III.  STIPULATED FACTS

At present, there are no relevant facts upon which the parties stipulate. The government has requested stipulations as to authenticity and which would eliminate duplication. For example, at present **six** different experts are subpoenaed from SERI laboratory to testify to certain work performed to generate the final DNA reports relevant to the case. The government has requested stipulations as to experts who collected evidence or performed aspects of the testing, so that only one expert would actually be needed to testify. Similarly, custodians of record are currently under subpoena to introduce business records such as telephone records, bank records, and email records. The government has

requested a stipulation to authenticity and the business records exception to the hearsay rule while still allowing the defendant to make any other substantive objections (relevance, etc.). The defense has stated that they will not be stipulating to any facts for this trial. Consequently, all of this may greatly expand the amount of time necessary for the trial and will cost the taxpayers a great deal more money, based upon expert time and travel for witnesses to testify at trial. It may also expand the amount of time necessary to try the case.

## IV. APPLICABLE LAW

The Government has listed the elements of the offenses above. As noted in Section I, *supra*, the government is not aware of the defense in this case and therefore cannot predict any affirmative defenses or other defenses. The defendant did raise the issue of mental defect or impairment pretrial, but in light of the Court's order that the defendant would need to be evaluated, he abandoned offering that defense.

## V. OTHER ISSUES RELEVANT TO THE TRIAL

The Government has raised additional legal issues in its motions *in limine*, filed with this Trial Brief. The Government respectfully requests an opportunity present any additional issues that may arise to the Court's attention.

**Translation**: To the government's knowledge, no translators will be needed for the defendant. Several government witnesses will require Spanish to English translation, which the government will provide.

**Counsel**: Defendant is represented by J. Tony Serra, Esq., and Brian Gregory, Esq.

**Custody**: The defendant is in custody pending trial.

**Estimated Trial Length**: As noted above, the government estimated a trial lasting three weeks. Given that the defendant will not stipulate to even the most basic authentications, the length of the government's case may take longer than originally predicted.

Dated: December 22, 2014

                                      Respectfully submitted

                                      MELINDA HAAG
                                      United States Attorney

                          By:      /s/
                                      William Frentzen
                                      Kimberly E. Hopkins
                                      Assistant United States Attorneys