UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MIKAL XYLON WILDE,<br><br>　　　　Defendant.<br>_____/ | No. CR-12-0144 EMC<br><br>**FINAL PRETRIAL CONFERENCE ORDER** |

## I. TRIAL DATE & LENGTH OF TRIAL

Jury completion of questionnaire shall occur on **February 2, 2015**. Jury voir dire and trial will commence on **February 3, 2015 at 8:30 a.m.** in Courtroom 5, 17th Floor. (Note: Jury questionnaires will not be filled out on **January 30, 2015** as discussed at the January 12, 2015 pretrial conference because a jury pool has already been subpoenaed for February 2). The parties expect the trial to last roughly four, possibly five, weeks, including opening statements and closing arguments. Trial shall be conducted from 8:30 a.m. to 2:00 p.m. (or slightly longer to finish a witness), with one 15-minute break and one 30-minute lunch break. If necessary, the Court may extend any trial day. Parties must arrive by 8:00 a.m., or earlier as needed for any matters to be heard out of the presence of the jury. The jury shall be called at 8:30 a.m. The trial week is Monday through Friday, excluding holidays. Thursdays are dark, absent further order. Trial will not be held February 16, 2015.

## II. PROCEDURE FOR EXHIBITS AT/DURING TRIAL

A. No later than the end of each trial day, counsel shall inform opposing counsel of which exhibits (including demonstrative evidence), if any, he or she intends to introduce during the next trial day and, if necessary, with respect to which sponsoring witness. If any such exhibits are objected to, both counsel shall notify the Court after the jury is excused for the day, and shall identify the exhibits at issue and the objections. The Court will then schedule a conference that afternoon or the following morning before trial to resolve the dispute.

B. At the end of each trial day, counsel shall also provide opposing counsel with a tentative preview of the exhibits he or she intends to introduce during the trial the day after next. Parties are directed to make a good faith effort to ensure such previews are as accurate as possible.

C. With respect to exhibits or demonstratives to be used on the first day of trial, counsel shall inform opposing counsel of which exhibits or demonstratives, if any, he or she intends to introduce by **Thursday, January 29, 2015, at 5:00 p.m.** If any such materials are objected to, both counsel shall notify the Court by **January 30, at 2:00 p.m.**, and shall identify the materials at issue and the objections. The Court will then address the dispute on the first day of trial, at **1:00 p.m., February 2, 2015** when the Court will hold a final pretrial conference to discuss any last minute issues.

D. If a party intends to use a projector or other equipment to show an exhibit (or demonstrative) to the jury, that equipment shall be set up and ready for use by 8:30 a.m. each day. The parties should immediately file with the Court, if necessary, administrative requests to bring projectors and/or other equipment to the courthouse for use at trial.

## III. PROCEDURE FOR WITNESSES AT/DURING TRIAL

A. Each party shall be prepared, during its case in chief or any rebuttal, to present its next witness. At any time, if the party whose case is being presented is not prepared to present its next witness, that party shall be deemed to have rested that portion of its case. No further witnesses shall be permitted by the party who has so rested in that portion of the case (*e.g.*, case in chief or rebuttal).

B.  Counsel are expected to cooperate with each other in the scheduling and production of witnesses, including informing one another of witness order. At the end of each trial day, counsel shall give opposing counsel notice of which witnesses will be testifying on the following day. At that time, counsel shall also provide a tentative preview of witnesses who are expected to testify the day after next. Witnesses may be taken out of order if necessary. Every effort shall be made to avoid calling a witness twice (as an adverse witness and later as a party's witness).

C.  Only one lawyer for each party may examine or cross-examine any single witness.

D.  If a witness is testifying at the time of a recess or adjournment and has not been excused, the witness shall be seated back on the stand when the Court reconvenes. If a new witness is to be called immediately following recess or adjournment, the witness should be seated in the front row, ready to be sworn in.

E.  Counsel shall refrain from eliciting testimony regarding any undisputed facts as set forth in any stipulation filed with the Court. The Court may read to the jury such undisputed facts at appropriate points in the trial.

F.  Witnesses shall be excluded from the courtroom until the total completion of their testimony, including rebuttal testimony, if any.

## IV.  OTHER PROCEDURES AT TRIAL

A.  To make an objection, counsel shall rise, say "objection," and briefly state the legal ground (*e.g.*, hearsay or relevancy). There shall be no speaking objections or argument from either counsel unless requested by the Court.

B.  Bench conferences, or the equivalent of sidebars, will not be permitted absent truly extenuating circumstances. Disputes regarding exhibits shall be resolved as set forth in Part II, *supra*. Any other disputes or problems should be addressed either before the trial day commences, at the end of the trial day, or during a recess, if necessary.

## V.  STIPULATIONS OF FACT

The Court is informed that the parties have yet to reach any stipulations of fact. The Government has further represented that defense counsel "has stated that they will not be stipulating

to any facts for this trial." Government's Trial Brief at 6 (Docket No. 118); *see also* Defendant's Trial Brief at 1 (Docket No. 130). Defense counsel informed the Court at the hearing that it is not currently prepared to enter into any stipulations. However, Defense counsel agreed to further meet and confer with the Government regarding possible stipulations.

As stated at the pretrial conference, the Court expects the parties to stipulate to those matters (including authenticity and chain of custody) over which there is no reasonable basis for dispute. Accordingly, the parties are **ORDERED** to continue to meet and confer regarding possible stipulations. The parties are further **ORDERED** to file a joint statement no later than **Friday, January 23, 2015**, addressing those facts to which the parties have stipulated. If a dispute remains as to such issues, they shall specify each such dispute on said date; the joint filing shall state, with particularity, the basis for disputing the matter.

## VI. GOVERNMENT'S MOTIONS IN LIMINE

A. <u>Government's Motion in Limine No. 1 (Docket No. 117): Defendant May Not Introduce His Own Prior Statements</u>

In its first motion in limine, the Government seeks to prohibit Defendant Wilde from introducing into evidence his own out-of-court statements, which the Government contends are inadmissible hearsay. According to the Government, Defendant Wilde "may have made a number of statements setting forth his defense in this case," for instance during jail calls or in statements made to other witnesses. The Government contends that while the *Government* may permissibly offer such out-of-court statements into evidence pursuant to the Federal Rules of Evidence – namely, Rule 801(d)(2)(A), which provides that out-of-court statements offered against a party opponent are not hearsay – *Defendant Wilde* may not. Moreover, the Government argues that if it chooses to introduce just portions of certain of Defendant Wilde's out-of-court statements (presumably the inculpatory portions), Defendant Wilde may not introduce other portions of those same statements (presumably the exculpatory ones), even for completeness.

The Government correctly notes that the statements of an opposing party are typically admissible against that party pursuant to Federal Rule of Evidence 801(d)(2)(A). *See* Fed. R. Evid. 801(d)(2)(A). The Government is also correct that Defendant Wilde may not generally seek

4

admission of his own hearsay statements, even if the Government chooses to admit just portions of those same statements. As the Ninth Circuit has explained, a criminal defendant's "non-self-inculpatory statements are inadmissible even if they were made contemporaneously with other self-inculpatory statements" admitted by the Government. *United States v. Ortega*, 203 F. 3d 675, 682 (9th Cir. 2000) (citing *Williamson v. United States*, 512 U.S. 594, 599 (1994)). "The self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay . . . but the non-self-inculpatory statements are inadmissible hearsay." *Id.*; *see also United States v. Nakai*, 413 F.3d 1019, 1022 (9th Cir. 2005) (holding that defendant may not introduce by cross-examination of a government witness the defendant's own exculpatory out-of-court statement).

Defendant Wilde opposes the Government's motion in part. Defendant Wilde concedes that he may not introduce his own unrecorded out-of-court statements, but argues that Federal Rule of Evidence 106 – often referred to as the rule of completeness – would permit him to admit additional relevant portions of his recorded out-of-court statements to the extent those portions "in fairness ought to be considered at the same time" as the Government's evidence. Fed. R. Evid. 106; *see also United States v. Collicott*, 92 F.3d 973, 982-83 (9th Cir. 1996) (describing Rule 106 as the "rule of completeness" and explaining that the rule allows a party to introduce additional portions of a document or recording when her adversary admits only a portion of the document or recording). Defendant Wilde's position has some merit.

In general, the Ninth Circuit has expressed the view that even where the rule of completeness would apply, exclusion of a defendant's exculpatory statements is appropriate where those statements "would still have constituted inadmissible hearsay." *Ortega*, 203 F.3d at 682 (citation omitted). Or, put more directly, "Rule 106 does not compel admission of otherwise inadmissable hearsay evidence.'" *Collicott*, 92 F.3d at 983 (quoting *Phoenix Associates III v. Stone*, 60 F.3d 95, 103 (2d Cir. 1995); *see also United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir. 1981) (holding that district court properly exercised its discretion to exclude inadmissible hearsay where defendant had requested that such hearsay be admitted pursuant to Rule 106).

However, at least one district court in this Circuit--citing *Ortega* and *Collicott*--has noted that while the "Rule of Completeness cannot serve as an end run around the prohibition on inadmissible hearsay, this principle does not allow the Government to offer abridged portions of statements that distort the meaning of a statement." *United States v. Castro-Cabrera*, 534 F. Supp. 2d 1156, 1161 n. 6 (C.D. Cal. 2008). As the *Castro-Cabrera* court explained, "the Rule of Completeness was designed to prevent the Government from offering a 'misleading-tailored snippet'" of testimony. *Id.* at 1160 (quoting *Collicott*, 92 F.3d at 983). Thus, as the court found, the "Rule of Completeness warrants admission of statements in their entirety when the Government introduces only a portion of *inextricably intertwined* statements." *Id.* (emphasis added).

Thus, while it is true that Rule 106 "cannot be used to trump the normal rules concerning the admissibility of evidence," *id.* at 1161, the Federal Rules of Evidence will not allow the Government to admit misleading snippets of Defendant Wilde's out-of-court statements as party admissions, while excluding other out-of-court statements that provide context to the Government's evidence. Accordingly, to the extent the Government seeks to admit a "misleadingly-tailored snippet" of Defendant Wilde's out-of-court statements, the Court will allow Defendant Wilde to present the statement in greater context "in order to avoid the injustice of having the meaning of [his] statement distorted by its lack of context." *Castro-Cabrera*, 534 F. Supp. 2d at 1161. Because such "analysis must be done on a case-by-case basis," *id.*, the Court reserves ruling on the Government's motion *in limine* at this time.

As the Court stated at the pre-trial hearing, the Government must inform the defense at least one day in advance if it intends to introduce Defendant Wilde's out-of-court statements. *See* Part II.A, *supra*. If there is a dispute regarding whether the Government's proposed statement(s) requires further context in order to be properly introduced, such a dispute will be raised with the Court at 8:00 a.m. before the start of the relevant trial day, as required by the general trial procedures set out in this Order.

B.  Government's Motion in Limine No. 2 (Docket No. 117): Punishment

The Government's second motion in limine seeks to preclude Defendant from making any reference to the potential sentence Defendant Wilde might face if convicted. The Government

1 correctly notes the general rule that "it is inappropriate for a jury to consider or be informed of the
2 consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992).

3 Defendant Wilde does not oppose the Government's motion. Accordingly, the Court
4 **GRANTS** the Government's second motion *in limine*.

C. <u>Government's Motion in Limine No. 3 (Docket No. 117): Use of State Law Enforcement Personnel or Complaint Records</u>

In its third motion in limine, the Government argues that Defendant Wilde should be prohibited from questioning any law enforcement officer about matters contained in his or her personnel file and/or relating to officer disciplinary matters unless Defendant Wilde first files an appropriate motion *in limine* seeking admission of such information. The Government cites this Court's General Orders, and specifically General Order 69, in support of its motion. *See* N.D. Cal. General Order No. 69 (Process for Subpoenaing & Using Personnel or Complaint Records of State Law Enforcement Officers Testifying in Federal Court).

General Order 69 provides that if a criminal defendant wishes to admit information from a state law enforcement officer's personnel or disciplinary file, "the defendant shall make an appropriate *in limine* motion seeking admission of the records at issue." *See id.* General Order 69 further requires that any such motion *in limine* be filed "no fewer that 14 days before the pretrial conference." *Id.* Because Defendant Wilde did not file any such motion *in limine*, and because he does not oppose the Government's motion, the Court **GRANTS** the Government's third motion *in limine*.

D. <u>Government's Motion in Limine No. 4 (Docket No. 117): Extrinsic Evidence for Impeachment</u>

In its fourth motion in limine, the Government seeks to preclude the Defendants from admitting extrinsic evidence for the purpose of impeaching Government witnesses' character for truthfulness or untruthfulness. The Government correctly notes that extrinsic act evidence is

typically inadmissible to prove a witness's character for truthfulness under Federal Rule of Evidence 608(b), subject to certain exceptions.[1]

Defendant responds that the Government has not "defined what it means by 'extrinsic evidence' or noted any specific instances in this case in which it anticipates" Defendant Wilde will attempt to admit such evidence. Docket No. 129 at 2. Given that a number of context-specific exceptions apply to Rule 608(b), and given that the Government has not provided the Court with any concrete examples where Defendant Wilde may attempt to admit extrinsic evidence for impeachment of a witnesses' character for truthfulness, the Court declines to rule on the Government's motion at this time. To the extent the Government believes Defendant Wilde is attempting to introduce extrinsic acts evidence in violation of Rule 608, the Government should object contemporaneously.

E.  Government's Motion in Limine No. 5 (Docket No. 117):  Exclude Evidence of Specific Acts of Violence by a Victim

In its final motion *in limine*, the Government seeks to prevent Defendant Wilde from introducing evidence of specific violent acts taken by any victim, where that evidence is being used to show that the victim has (or had) a violent character. The Government is concerned that Defendant Wilde may argue self-defense, and then attempt to prove by way of specific acts of violence that one or more of his alleged victims has/had a propensity towards violence.

The Government is correct that the Ninth Circuit does not typically permit "a defendant claiming self-defense to introduce specific acts demonstrating his victim's propensity for violence."[2]

---

[1] For instance, Rule 609 permits the admission of evidence of certain criminal convictions if relevant to undermine a witness' character for truthfulness. *See* Part VII.A, *infra*. The Government acknowledged at the pretrial hearing that at least some of its witnesses have prior criminal convictions that may be the proper subject of impeachment under Rule 609. As indicated at the hearing, Defendant Wilde will not be allowed elicit details of any prior conviction beyond the nature and description of the charge(s) for which the witness was convicted, the time and place of the conviction, and the sentence imposed.

[2] The Government concedes that Defendant Wilde himself may testify that an alleged victim engaged in specific acts of violence to the extent Defendant Wilde had personal knowledge of those acts at the relevant time, if that testimony is elicited to prove that Defendant Wilde believed that the victim was violent and his belief was a reasonable one. *See* Docket No. 117 at 6; *see also United States v. James*, 169 F.3d 1210, 1214-15 (9th Cir. 1999) (en banc) (permitting defendant to testify about victim's past acts of violence where such testimony was relevant to defendant's state of mind).

8

1  *United States v. Keiser*, 57 F.3d 847, 855 (9th Cir. 1995). Rather, to the extent a victim's character
2  or propensity for violence is somehow relevant, the defendant may only prove that fact by way of
3  reputation or opinion testimony.[3] *See id.* ("[V]ictim character evidence introduced to support a
4  claim of self-defense or defense of another should be limited to reputation or opinion evidence.").
5  *See also* Fed. R. Evid. 405. Moreover, to the extent Defendant Wilde seeks to prove the victim's
6  character for violence, admissibility of evidence of character is subject to Rule 404.

7  In his response to the Government's motion, Defendant Wilde states that "[a]t this juncture,
8  the defense does not anticipate, under the prosecution's theory of the case, this issue [of specific
9  violent acts of victim] being raised." Docket No. 129 at 2. Defendant Wilde further notes that
10 "should acts of violence by a victim become relevant from the perspective of the defense, the
11 defense will request a hearing on such an issue." *Id.* The Court will defer ruling on this issue at this
12 time. Defendant is reminded that he must disclose any intention to seek admission of evidence of
13 specific acts of violence by a victim at least one trial day before he attempts to introduce such
14 evidence. If the Government objects to such evidence, the parties will raise their objections to the
15 Court at 8:00 a.m. on the relevant day outside the presence of the jury pursuant to this Court's trial
16 procedures. *See* Part II.A, *supra*.

///
///
///
///
///

---

[3] The Government asks that should Defendant Wilde attempt to offer evidence of an alleged victim's reputation for violence, or opinion testimony regarding an alleged victim's violent character, that Defendant Wilde be required to make an evidentiary proffer outside the presence of the jury regarding his witness' (or witnesses') foundation for such testimony. The Government is (reasonably) concerned that in laying the foundation for such opinion or reputation testimony, defense counsel might inquire into specific acts of violence committed by the victim. The Court grants the Government's request. Should Defendant Wilde seek to elicit testimony regarding a victim's character for violence, Defendant Wilde will need to make an appropriate proffer outside the presence of the jury so that inadmissible specific acts evidence is not "smuggled" into the case under the guise of presenting admissible character evidence.

9

## VII.    DEFENDANT'S MOTIONS IN LIMINE

A.    <u>Defendant Wilde's Motion in Limine No. 1 (Docket No. 114): Admit Evidence Regarding Guatemalan Conviction Records</u>

In his first motion *in limine*, Defendant Wilde asks this Court permit him to introduce records showing that one of his alleged victims, Mr. Lopez-Paz, was previously convicted of bribery in his home country of Guatemala. Mr. Lopez-Paz is expected to testify as a witness at trial.

Defendant Wilde spends a great deal of effort arguing in his motion why Mr. Lopez-Paz's foreign conviction records are admissible and not hearsay. The Government candidly agrees that foreign conviction records are admissible, and that "in the event that defendant can produce a legitimate copy of a conviction document, then the government would not contest its admissibility, so long as defendant can show a legitimate purpose for its admission." Docket No. 123 at 3. As the Government concedes, such an admissible purpose would be to undermine Mr. Lopez-Paz's credibility as a witness. *See* Fed. R. Evid. 609(a) (allowing impeachment by evidence of a criminal conviction in order to "attack[] a witness's character for truthfulness"). The Government does not dispute that Rule 609(a) applies to foreign convictions.

Where the Government and Defendant Wilde part ways is whether Defendant Wilde has presented sufficient evidence that Mr. Lopez-Paz was actually convicted of a crime in Guatemala. Having reviewed Defendant Wilde's evidentiary submissions made in connection with his motion *in limine*, the Court recognized the Government's concerns. Defendant Wilde submitted no authenticating declaration or affidavit with his materials, submitted copious translations (of non-authenticated documents) without including the originals, and did not make clear to the Court precisely where in his submissions he contends that the fact of Mr. Lopez-Paz's conviction is proved. Consequently, the Court ordered Defendant Wilde to submit a more fulsome evidentiary proffer aimed at curing these defects. *See* Docket No. 128.

The Court has now throughly reviewed Defendant's evidentiary proffer. *See* Docket Nos. 132-33. As stated on the record at the pre-trial conference, the Court is of the initial view that Defendant Wilde has sufficiently established that Mr. Lopez-Paz was convicted in Guatemala of the

offense of "passive bribery."[4]  However, the Court agreed to defer ruling on Defendant Wilde's first motion *in limine* until the Government has had more time to review Defendant Wilde's somewhat voluminous filing.  Among other things, the Government requested time to seek its own certified translation of the Spanish language documents at issue.  The Government is hereby **ORDERED** to file any remaining objections to the admissibility Defendant Wilde's preferred documents by **5:00 p.m. on Thursday, January 22, 2015.**  Such a filing shall not exceed seven (7) pages in length.  If necessary, Defendant Wilde may file a response to the Government's remaining objections, similarly not to exceed seven (7) pages in length, by **Thursday, January 29, 2015.**  If a hearing is necessary, the Court may hold one to resolve this issue on **Friday, January 30, 2015**.

B.  <u>Defendant Wilde's Motion in Limine No. 2 (Docket No. 116):  Preclude Evidence of Defendant's Prior Marijuana Conviction</u>

In his second and final motion *in limine*, Defendant Wilde argues that the Government should be prohibited from informing the jury of his prior arrest and conviction for illegally possessing and transporting marijuana.  Defendant Wilde argues that such prior "bad acts" evidence is inadmissible under Federal Rule of Evidence 404(b), which provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).

While Rule 404(b)(1) prohibits the use of "bad acts" evidence to prove action in conformance with character, Rule 404(b)(2) provides, in relevant part, that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  Thus, for example, should Defendant Wilde argue that he did not know that the marijuana allegedly grown on his property was, in fact, marijuana, the Government might seek admission of Defendant Wilde's prior conviction to prove Defendant Wilde's knowledge of what marijuana looks or smells like. *See*

---

[4] At the pretrial hearing, Government's counsel suggested that if evidence of Mr. Lopez-Paz's conviction is admissible under Rule 609, the Court would still need to consider whether to admit such evidence under other evidentiary rules, such as Rule 403.  This is incorrect.  Where the crime of conviction is one that "required proving -- or the witness's admitting -- a dishonest act or false statement," Fed R. Evid. 609(a)(2), such evidence will automatically be admitted. *See id.* (noting that evidence of conviction for a crime involving a dishonest act "must be admitted").

*id.* Of course, as Defendant Wilde correctly points out in his motion *in limine*, even if evidence of prior bad acts is admissible under Rule 404(b)(2), the Court may nevertheless exclude it under Federal Rule of Evidence 403, which gives the Court discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

At this juncture, the Court cannot rule on Defendant Wilde's motion because neither the Defendant nor Government know whether (or for what purpose) Defendant Wilde's past conviction might be used during his upcoming trial. Consequently, the Court defers ruling on the motion at this time. Again, counsel for the Government is reminded that should it seek to obtain admission of Defendant Wilde's prior conviction, such intent shall be disclosed to Defendant Wilde at least one trial day in advance, and any objections properly raised with the Court before the start of the trial day.

### VIII. WITNESSES

Below is a list of the witnesses the Government and Defendant currently intend to call or may call as the need arises. The parties shall not offer any witness other than those identified on the below final witness lists absent good cause and express leave of the Court. The parties are further **ORDERED** to file a version of their respective witness list that provides a reasonable estimate of the time that the party expects each of its own witnesses to testify for on direct examination. Witness lists with the required time estimates shall be filed no later than **Friday, January 23, 2015.**

A. Government Witnesses

1. Carlos Alfaro, U.S. DEA Special Agent
2. Jamie Barney, Humboldt County Sheriff's Office Deputy
3. Christopher Bigelow
4. Leslie Borges, Humboldt County Sheriff's Office Deputy
5. Philip Buihner, Humboldt County Sheriff's Office Sergeant
6. John Chappell, DEA Chemist
7. Ruben Childs

8. Dwayne Christian, Humboldt County Sheriff's Office Deputy
9. Dale Cloutier, California Department of Justice Senior Criminalist
10. Matthew Collar, FBI Special Agent
11. Michael Darling, Redding Police Department Crime Scene Investigation Examiner
12. Carlos Deonis-Salazar
13. Timothy Farrell, California Fire Firefighter
14. Josh Faulkner, California Fire Captain
15. Dr. Marcella Fierro
16. Megan Gallagher, California Department of Justice Criminalist
17. Brad Gill, United States Marshal Service Deputy
18. Dr. Thomas Gill
19. Donald Graham
20. Richard Grimm (formerly Humboldt County Sheriff's Office Forensic Examiner)
21. Gary Harmor, Serological Research Institute, Executive Director and Chief Forensic Serologist
22. Fernando Lopez-Paz
23. Clarita Madrid
24. Susan Marvin, FBI Forensic Examiner/Metallurgist
25. Kevin Miller, Humboldt County Sheriff's Office Deputy
26. Allison Murphy, California Fire Engineer
27. Gregory Musson, Humboldt County Sheriff's Office Detective
28. Craig Ogino, Chula Vista Police Department Crime Lab, Director and Criminalist
29. William Posey, Central Valley Toxicology, Inc., Director
30. Karen Quennell (former Humboldt County Sheriff's Office Evidence Technician)
31. Joseph Raschke, FBI, Cellular Analysis Survey Team Special Agent
32. Donald See, FBI, Computer Analysis Response Team, Forensic Examiner
33. Cyrus Silva, Humboldt County Sheriff's Office Deputy
34. Charles Van Buskirk, Humboldt County Sheriff's Office Deputy Coroner

35. Charles Tripodi
36. Kyla Tripodi
37. Thomas Tuohy
38. Robert Auerback, Fidelity National Title Company, Custodian of Records
39. Lori Blaisdell, Wells Fargo Bank, Legal Processing Unit
40. Debbie Walker, North Valley Bank, Custodian of Records
41. Angela Butler, Serological Research Institute, Forensic Serologist
42. Adam Brendt, Serological Research Institute, Evidence Technician
43. Amy Lee, Serological Research Institute, Forensic Serologist
44. Tom Fedor, Serological Research Institute, Forensic Serologist
45. Jennifer Williams, Serological Research Institute, Forensic Serologist
46. Dr. Douglas Hatter and/or Dr. James Tate and/or Custodian of Records, Mercy Hospital
47. US Cellular Records, Custodian of Records
48. Verizon Wireless, Custodian of Records
49. Microsoft Corporation/Hotmail, Custodian of Records
50. Yahoo! Inc., Custodian of Records
51. Shell Gift Card, Custodian of Records

B. <u>Defendant Wilde</u>

1. Kyla Tripodi
2. Charles "Charlie" Tripodi
3. Reuben Childs
4. Tom Tuohy
5. Daisy Wilde
6. Heather Hanko
7. Donna Fulton
8. Danica Torrez
9. Ken Estes

14

10. Desiree Early
11. Dale Cloutier
12. B. Berg
13. Karen Quenell

## IX. DEMONSTRATIVES

The parties shall meet and confer in advance (prior to the date of demonstration) and exchange demonstratives to avoid objections. Any objections shall be brought to the Court's attention before 4:00 p.m. the day prior to being exhibited.

## X. JURY VOIR DIRE, JURY INSTRUCTIONS, & VERDICT FORM

### A. Jury Questionnaire and Voir Dire

The Court has reviewed the parties' jointly proposed jury questionnaire and has approved it, subject to the Court's modifications to be provided to the parties. The parties may wish to work towards further shortening the questionnaire. Any suggested changes to the questionnaire shall be submitted to the Court by January 22, 2015. The Court will issue the final form prior to January 29, 2015. The Government will be responsible for making 100 copies and delivering them to the Jury Administrator by 4:00 p.m., January 29, 2015. The Government shall retrieve the completed questionnaires on Monday, February 2, and promptly deliver one (1) copy set to Defendant's counsel and two (2) sets to the Court. The Court shall give each party a brief opportunity (*e.g.*, 30 minutes each) to voir dire orally the potential jurors after questioning by the Court.

### B. Jury Instructions

The Government filed proposed jury instructions on December 30, 2014. Docket No. 119. Defendant Wilde "adopts the government's proposed jury instructions," but seeks to reserve the right to "request changes as the circumstances of the trial may dictate." Docket No. 125 at 2. Given Defendant Wilde's concession that he has adopted the government's instructions, the Court will not permit Defendant Wilde to later argue against any of the Government's proposed instructions. To the extent Defendant Wilde wishes to request that additional or different instructions be given, any such request must be made to the Court by formal motion filed no later than the close of Defendant's case.

The Court will issue a proposed set of final instructions to the parties and give the parties sufficient time to comment on, or object to (subject to the limitation discussed above), the Court's proposed final instructions before the instructions are read to the jury.

C. <u>Verdict Form</u>

The Court will review the proposed verdict forms and provide a final verdict form before the close of evidence.

IT IS SO ORDERED.

Dated: January 13, 2015

_____
EDWARD M. CHEN
United States District Judge